UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
(at Covington)

| | |
|---|---|
| TAWNA BOWLES, | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 2: 23-146-DCR |
| | ) |
| V. | ) |
| | ) |
| SSRG HOLDINGS, LLC, d/b/a | ) **MEMORANDUM OPINION** |
| CHICKEN SALAD CHICK, | ) **AND ORDER** |
| | ) |
| Defendant. | ) |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Tawna Bowles ("Bowles") requested a workplace accommodation for her arthritis. After Defendant SSRG II, LLC d/b/a Chicken Salad Chick ("CSC") refused to grant it, Bowles initiated this action for failing to accommodate her under the Americans with Disabilities Act ("ADA") and the Kentucky Civil Rights Act ("KCRA"). The matter is currently pending for consideration of CSC's Motion for Summary Judgment. [Record No. 43] The motion will be granted because Bowles' proposed accommodation is not objectively reasonable considering the job for which she applied.[1]

**I.**

On December 28, 2022, Tawna Bowles applied for a "restaurant team member" position at CSC. [Record no. 34-1, p. 2] According to the description on CSC's website, the

---

[1] The Court "construe[s] all evidence in the light most favorable to the non-moving party." *Two Old Hippies, LLC v. Catch the Bus, LLC*, 807 F. Supp. 2d 1059, 1069 (D.N.M. 2011) (citing *Hunt v. Cromartie,* 526 U.S. 541, 550–55 (1999)).

position entailed, *inter alia*, "support[ing] and assist[ing] fellow team members whenever possible … [m]aintain[ing] a safe, clean, and organized work area[,] … restock[ing] [the] work area … [and] "complet[ing] other related duties as assigned by [the] supervisor." [Record No. 34-1, p. 3] The job listing also required an "[a]bility to work in a fast-paced environment" and included several physical demands; mandating that the applicant:

- Exert up to 40 pounds of force occasionally to lift, carry, push, pull or otherwise move objects
- Must be able to stand and exert well-paced mobility, including bending and stooping, for the duration of the workday
- Must be able to work and perform all duties at assigned station(s) in the kitchen or service area[.]

[*Id.*]

Finally, the job summary stated that successful applicants "will support up to three functional areas of the restaurant: Service, Sandwich Line, and Production. [*Id.*] In CSC's separate description of "Service Staff," the "Duties & Responsibilities" include expectations that employees:

- Always adhere to brand standards for uniform appearance and personal grooming.
- Maintain a safe, clean, and organized work area.
- Be a team player-support and assist your fellow team members whenever possible.
- Maintain cleanliness/sanitation standards.
- Greet guests, take food/beverage orders, expedite orders, assist with dining room service.
- Properly operate POS system for taking all types of guest orders.
- Be responsible for properly charging guests and for collecting payment for orders; cash, credit or debit card transactions.
- Answer phone properly with knowledge to assist guest with questions/information and take phone orders.
- Interact with guests in a friendly and efficient manner.
- Restock drink station and expo area, maintain restroom cleanliness, empty trash cans and help to keep dining room and other guest areas clean

- Maintain proper product temperatures per standards.
- Maintain portion-control for products per standards.
- Clean equipment, as assigned, thoroughly and in a timely fashion.
- Keep floor in work or service area clean and free of debris.
- Complete daily tasks timely and thoroughly in accordance with standards.

[Record No. 34-18, p. 2 (cleaned up)]

Bowles has severe arthritis, and the parties agreed that this condition "qualif[ies] as a disability." [Record No. 50, p. 2] Bowles informed assistant manager Larry Denny she would need to sit intermittently due to her condition when she interviewed at CSC's Crestview Hills location on December 30, 2022. [Record No. 43, p. 2] According to Bowles, Denny assured her this accommodation "would not be an issue and affirmed that she would be able to use a chair or stool while working." [*Id.*, pp. 2-3] The plaintiff was hired, and the following day she was provided with onboarding information and instructed to report to CSC on January 2, 2023, for her first day of work. [*Id.*, p. 3] But when she arrived at work that day, she was sent home and told to return the next day. The following day, she was sent home again, without being given a date to return. [*Id.*]

On January 6, 2023, CSC's vice president of human resources Mary Lou Atkins contacted Bowles and instructed her to submit a doctor's note detailing her proposed accommodation request. [*Id.*] Bowles believed the note was submitted on January 12, 2023, so she followed up with Atkins that day to confirm receipt. [*Id.*] Atkins did not respond so Bowles sent her another email on January 24, 2023.

Two days later, Atkins responded and informed Bowles that her medical documentation had not been received. [*Id.*] Eventually, Bowles submitted the doctor's note again and CSC

confirmed receipt *via* email.  CSC became aware that Bowles would need to sit five minutes for every ten minutes she stood (i.e., for one-third of her shift).  [*Id.*, p. 4]

On February 7, 2023, Atkins called Bowles to inform her that CSC did not have a position enabling her to sit considering Bowles' requested accommodation and, therefore, could not accommodate her.  [Record No. 34-16]

## II.

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  However, a dispute over a material fact is not "genuine" unless a reasonable jury could return a verdict for the nonmoving party.  In reviewing a motion for summary judgment, the court must view all facts and draw all reasonable inferences in a light most favorable to the nonmoving party.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).  The Court may not weigh the evidence or make credibility determinations but must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986); *see also Moran v. Al Basit LLC*, 788 F.3d 201, 204 (6th Cir. 2015).

The movant bears the initial burden of "showing that there is an absence of evidence to support the nonmoving party's case." *Two Old Hippies, LLC v. Catch the Bus, LLC*, 807 F. Supp. 2d 1059, 1068 (D.N.M. 2011) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986)) (cleaned up).  But once the moving party has satisfied this burden, the opposing party must set forth specific facts showing that there is a genuine issue for trial." *McLaughlin v. Fifth Third Bank, Inc.*, 772 F. App'x 300, 302 (6th Cir. 2019) (citing Fed. R. Civ. P. 56(e)).  In other

words, the nonmoving party must present "significant probative evidence that establishes more than some metaphysical doubt as to the material facts." *Golden v. Mirabile Invest. Corp.*, 724 F. App'x 441, 445 (6th Cir. 2018) (citation and alteration omitted).

### III.

"Because the language of the KCRA parallels the requirements of the ADA, courts commonly use the ADA to interpret the KCRA." This Court will proceed accordingly. *Banks v. Bosch Rexroth Corp.*, 15 F.Supp. 3d 681, 688 (E.D. Ky. 2014), *aff'd*, 610 F. App'x 519 (6th Cir. 2015) (citing *Bryson v. Regis Corp.,* 498 F.3d 561, 574 (6th Cir. 2007)). Construing the facts most favorably to the plaintiff, the complaint presents two separate claims sounding in disability discrimination, specifically: (1) failure to accommodate pre-hire and (2) failure to engage in the interactive process post-hire. Because no genuine issues of material fact preclude summary judgment, CSC's motion will be granted.

**Failure to Accommodate Pre-Hire**

It is unlawful under the ADA for an employer to "discriminate against a qualified individual on the basis of disability." *Keith v. Cnty. of Oakland*, 703 F.3d 918, 927 (6th Cir. 2013) (quoting 42 U.S.C. § 12112(a)). The Act "defines 'discriminate' to include the failure to provide reasonable accommodation to an otherwise qualified individual with a disability, unless doing so would impose an undue hardship on the employer's business." *Id.* (citing 42 U.S.C. § 12112(b)(5)).

A plaintiff seeking to demonstrate that he or she has been discriminated against in the employment context can do so through direct or indirect evidence. *Hendrick v. Western Reserve Care System*, 355 F.3d 444, 452 (6th Cir. 2004). "Direct evidence of discrimination is that evidence which, if believed, requires the conclusion that unlawful discrimination was

at least a motivating factor in the employer's actions." *Geiger v. Tower Auto.*, 579 F.3d 614, 620 (6th Cir. 2009). Indirect evidence must show "circumstances which give rise to an inference of unlawful discrimination." *Moore v. Coca-Cola Bottling Co. Consol.*, 113 F.4th 608, 622 (6th Cir. 2024). A successful plaintiff need not offer both direct and circumstantial evidence as "[t]he direct evidence and circumstantial evidence paths are mutually exclusive; a plaintiff need only prove one or the other, not both." *Kline v. Tennessee Valley Auth.*, 128 F.3d 337, 348-49 (6th Cir. 1997).

"[F]ailing to make a reasonable accommodation falls within the ADA's definition of 'discrimination.' Accordingly, claims premised upon an employer's failure to offer a reasonable accommodation necessarily involve direct evidence (the failure to accommodate) of discrimination." *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 869 (6th Cir. 2007). *See also Blanchet v. Charter Commc'ns., LLC*, 27 F.4th 1221 (6th Cir. 2022) ("Since the record reflects that Blanchet's claim was based on Charter's failure to accommodate, it *necessarily involves direct evidence* of discrimination under the ADA.") (emphasis added).

Bowles has not offered any indirect evidence of disability discrimination; therefore, the Court will apply the direct evidence test. In proving a failure to accommodate through direct evidence:

> (1) The plaintiff bears the burden of establishing that he or she is disabled. (2) The plaintiff bears the burden of establishing that he or she is "otherwise qualified" for the position despite his or her disability: (a) without accommodation from the employer; (b) with an alleged "essential" job requirement eliminated; or (c) with a proposed reasonable accommodation. (3) The employer will bear the burden of proving that a challenged job criterion is essential, and therefore a business necessity, or that a proposed accommodation will impose an undue hardship upon the employer.

*Hendrick*, 355 F.3d at 452.

Finally, "it is the plaintiff's burden to propose an accommodation that is 'objectively reasonable.'" *Keith*, 703 F.3d at 918 (citing *Kleiber,* 485 F.3d at 870).

### Bowles' Proposed Accommodation was not Reasonable.

Bowles' proposed accommodation was not reasonable considering the job description of the role for which she applied. Bowles repeatedly frames the opening as a "cashier" position. And while it appears the term "cashier" was frequently substituted colloquially, Bowles actually applied for a position as a "restaurant team member."

Bowles contends she was "fully capable of performing the essential functions of a cashier position[,]" that she was "immediately hired to be a cashier" and that she "has easily met her burden to show that she was able to be a cashier for Defendant with a reasonable accommodation[.]" [Record No. 43, pp. 1, 3, and 8] Review of Bowles' memorandum in opposition to CSC's motion for summary judgment reveals the word *cashier* is used 27 times. [*See id.*] But CSC's "restaurant team member" position entails many more responsibilities than simply operating a cash register, and Bowles has provided no evidence that a standalone cashier position exists. In other words, without any factual allegations to the contrary, the mere use of the word "cashier" is not sufficient to rebut CSC's evidence that cashiers had many roles requiring constant physical movement. [*See* Record No. 41, p. 75 ("You could sit if you were just taking orders at the register. Part of the job is not only to take the orders at the register, but it is also to run food, trash, bathrooms, soda machine, expo, put bags together, handle guest situations.")]

To Bowles' credit, Mary Lou Atkins mentioned accommodations previously made for "cashiers" and an accommodation allowed for a "Team Leader." [Record No. 34-7, pp. 1-2] However, Bowles has not provided evidence that CSC employed standalone "cashiers" that

were not responsible for the many other duties required in the "restaurant team member" description. Thus, the distinction between a theoretical, non-existent "cashier" role and the practical role required of team member/cashiers is critical in determining whether Bowles' proposed accommodation to sit five minutes for every ten minutes she stood was objectively reasonable. If such a standalone cashier role existed, the proposed accommodation could qualify as a reasonable request; however, the same cannot be said for a "restaurant team member" required to "stand and exert well-paced mobility, including bending and stooping, for the duration of the workday[.]" [Record No. 34-3, p. 3]

A plaintiff must show an accommodation "seems reasonable on its face[.]" *US Airways, Inc. v. Barnett*, 535 U.S. 391, 401 (2002). But because Bowles' proposed accommodation is not feasible for a "restaurant team member" role, it cannot be objectively reasonable on its face. Bowles contends that the reasonableness of an accommodation should be an issue for a jury, and specifically, "periodic sitting and the use of a stool have repeatedly been found to be reasonable accommodations within this Circuit." [Record No. 43, pp. 6-7] However, the cases she cites do not support this assertion.

First, Bowles argues this case is similar to *Lowe v. Calsonic Kansei N. Am., Inc.*, No. 1:18-CV-00027, 2020 WL 2473757 (M.D. Tenn. May 13, 2020), because the "plaintiff's accommodation of being permitted to sit 50% of the time was reasonable on its face[.]" [Record No. 43, p. 7] But in *Lowe*, the defendant employer "allowed another employee who performed the same job … to sit down 100% of the time to accommodate her knee problems for several years." *Id.* at \*5. Here, Atkins stated that there were two cashiers allowed to sit for 10 minutes for every three hours they stood (one eighteenth of their shift), but no employees were allowed to sit five minutes for every ten they stood (one third of their shift, *six times* more

sitting time). [Record No. 34-7, pp. 2-3] And Bowles does not identify any other employees at CSC provided similar accommodations.

Next, in *Talley v. Fam. Dollar Stores of Ohio, Inc.*, 542 F.3d 1099 (6th Cir. 2008), the Sixth Circuit addressed a situation in which a plaintiff was "unable to stand or sit for long periods of time." "Her position involved operating the cash register, cleaning the store, and stocking shelves." *Id.* at 1102. But when the plaintiff proposed an accommodation in which she could use a stool, it was only deemed a reasonable accommodation because "her prior supervisors allegedly were not concerned about Talley's productivity when she was allowed to use the stool" and there was "testimony that Talley was able to adequately perform her job at the register with the use of a stool" *Id.* at 1108.

Here, the "restaurant team member" position involves more activity than that required of the *Talley* plaintiff. Specifically, restocking the drink station and expo area, cleaning the restroom, dining room, and other guest areas, taking and expediting orders, cleaning equipment and emptying trash cans are all requirements of the CSC "service staff" role, which is incorporated into the "restaurant team member" job summary. [Record No. 34-18, p. 2; Record No. 34-2, p. 1] Further, while assistant manager Denny told Bowles that intermittent sitting would be possible, that was *before* CSC knew the extent to which Bowles needed to sit—namely, one third of her shift.

Bowles next alleges her case is analogous to *Gleed v. AT&T Mobility Servs., LLC*, 613 F. App'x 535 (6th Cir. 2015), because the plaintiff's "sit-as-needed" accommodation survived summary judgment. [Record No. 43, p. 7] But in *Gleed*, the plaintiff requested a chair for a retail sales position in which he could complete his job without standing *and* a pregnant co-worker was permitted to sit, but he was not. Again, Bowles has not offered evidence to

establish that she could perform any functions listed in the job description of the position for which she applied other than operating a cash register, and she has not identified any employees allowed to sit anywhere near one third of their shift in the cashier/restaurant team member position.

Finally, this case is distinct from *Adams v. TRW Auto. US. LLC*, No. 3:03-1240, 2005 WL 1862302 (M.D. Tenn. July 22, 2005). In *Adams*, the plaintiff provided evidence suggesting he could continue to meet his production goals in a factory setting if he sat while waiting for machines to complete their cycle. Here, Bowles has provided any evidence that she could restock drink machines, clean the work area and the bathroom, take and deliver orders, or meet the other requirements of the prospective job if she were required to intermittently sit for one third of her shift. [*See* Record No. 34-18, p. 2; Record No. 34-2, p. 1.]

Next, Bowles contends that because assistant manager Denny told her she could "use a chair or stool while working" and assured her she could sit intermittently, her requested accommodation was reasonable. [Record No. 43, pp. 2-3] But even accepting this as true, it is undisputed that Denny made these statements *before* CSC knew the duration Bowles would need to be seated each shift. CSC also states that "there are no such chairs available behind the counter at Chicken Salad Chick's fast food locations." [Record No. 50, p. 4] And while the Court is unaware of any nationwide chair shortage, this assertion is beside the point. A chair or stool would not be *per se* unreasonable if Bowles were only required to attend to the cash register. However, Bowles has not demonstrated she could fulfill the needs of a restaurant team member if she needed to be seated at the frequency she requests. Unlike the plaintiffs in *Gleed* and *Talley*, Bowles has not identified any other employees who were able to perform

their job responsibilities while sitting for one third of their shift, and she has not demonstrated how *she* could perform the required job duties with her accommodation.

Bowles further claims Atkins "admitted there are positions in which an employee could sit." [Record No. 8, p. 8] Again, however, Atkins only allowed for accommodations when other employees needed to sit for ten minutes after three hours of standing. This does not constitute an unqualified admission that employees could sit whenever they pleased. Because the requested accommodation was not pragmatic in light of the position for which Bowles applied (and its coordinate responsibilities), and because she cannot identify other employees who were allowed to sit for similar periods, her proposed accommodation does not present a genuine dispute of material fact suited for a jury.

### Failure to Engage in the Interactive Process (Accommodation Post-Hire)

Although Bowles' ultimate employment status was contested, for purposes of resolving the pending motion the Court will presume she was hired viewing the facts in the light most favorable to her. Bowles argues that CSC failed to engage in the interactive process required under the ADA.

"[A]n employer violates the ADA when his unwillingness to engage in a good faith interactive process leads to a failure to reasonably accommodate an employee." *Gati v. W. Kentucky Univ.*, 762 F. App'x 246, 252 (6th Cir. 2019). However, "a failure to engage in the interactive process is only an independent violation of the ADA if the plaintiff establishes a prima facie showing that she proposed a reasonable accommodation." *Id.*, 762 F. App'x at 252 (quoting *Rorrer v. City of Stow*, 743 F.3d 1025, 1041 (6th Cir. 2014)) (cleaned up). Thus, because Bowles' proposed accommodation request was not objectively reasonable, her claim that CSC failed to engage in the interactive process also fails.

-11-

**IV.**

Based on the foregoing analysis and discussion, it is hereby

**ORDERED** as follows:

1. Defendant SSRG II, LLC d/b/a Chicken Salad Chick's ("CSC") motion for summary judgment [Record No. 34] is **GRANTED**.

2. Plaintiff Tawna Bowles' claims are **DISMISSED**, with prejudice.

3. The jury trial, previously scheduled to begin March 25, 2025, is **CANCELED**.

Dated: March 11, 2025.

<u>Danny C. Reeves, District Judge</u>
United States District Court
Eastern District of Kentucky